Honorable judges, if it please the court, my name is Bernard Van Sleitman and I am counsel for the appellant, Alan Dinzey. I ask to be allowed three minutes of rebuttal time. Right. Your Honor, it's unfortunate that in considering this appeal, both counsel have proffered to the court two separate standards of review. You have. And I think if I am to be successful in this appeal, I'm going to have to convince this court that the appropriate, under the circumstances of this case, that the appropriate standard of review is de novo. And you have cited United States v. Williams, one of our cases. That is correct. As a basis for that. How does that support your position? Okay. The reason why I cited Williams. Williams never even uses the term de novo. That's correct. But the reason, as I understand the law with respect to appellate review, if there is no findings of fact, there's just an issue of law for this appellate court to decide, then the standard is, in fact, de novo. Williams cited, and, well, Williams cited the Gilmore, Gilmore cited the Seventh Circuit arguments and decisions of the Seventh Circuit, which speaks specifically to the de novo standard of. But isn't there a factual issue here of prosecutorial misconduct? That is correct. And normally, in those situations, the standard of review is intent. Well, in fact, Williams, the case that you rely upon, actually declares, quote, ordinarily, a trial judge's interpretation of events occurring in that judge's courtroom are entitled to considerable deference. That's correct. But what I'm trying to convince this panel is that there was no finding of fact. And if the court can find, if this court can find that there were findings of fact, then surely the facts upon which the judge below relied upon shows an intent. And the reason I say that is that it is clear once the statement was made, the Bruton statement was made, shortly thereafter, the prosecutor admitted that she knew that this was a Bruton matter. The court itself indicated that it understood what Bruton is and that this was a Bruton concern. After that, there was no hearing. The court speaks of, the suppellant court speaks to Williams. And Williams is important because even to the cases that Williams cited, they spoke in terms of hearings that were had. I think going back to Kennedy, there were hearings in terms of why the prosecutor did certain things. In Coleman, there were hearings as to why or understanding why there was a factual scenario developed as to determine whether or not there was intent on the part of the prosecutor. Where's the evidence of intent in this case? The prosecutor says that, or admitted that she understood when she was asking the question that this was a Bruton matter. When asked specifically by the district court, she said that she understood that this was a Bruton matter. The testimony that was elicited from the narcotics agent clearly was leading to Bruton. And in fact, before the statement was even made, the objection on the basis of Bruton came up. Subsequent to the sidebar communications, the judge himself indicated that he understood that this was a Bruton matter. Isn't it significant here that the attorney for the government argued against a mistrial? This wasn't an attempt to lure the court into a declaration of a mistrial, right? I'm sorry, I didn't hear the first part of your question, Your Honor. Is it not significant that the government argued against the declaration of a mistrial here? I don't think so. I think at that point in time, there was no option but to do so. The government knew that it was a Bruton matter. What else would the defendant have to do at that point in time? If they knew that the Bruton matter issue was coming up, that the testimony was going to come before the jury, and that this was something that was clearly error, surely one has to defend themselves. But the fact is that this was done, and this was done with a person or a narcotics agent who had come to testify. This was the third time that this person was testifying on direct in this case. It was the third time, and at this time when the testimony was coming up as to the extrajudicial statement that brought about the Bruton error, it was clear even before the statement was made what was coming. Attorneys jumped up and objected. Defense attorneys shouted Bruton. And what the court said at that point in time, which was interesting, it indicated that we want to get to the statement. That was the words of the district court. We want to get to the statement, and what is that statement? But it was clear what was coming because we had motions early in the year to suppress those very statements from this particular, or concerning that particular co-defendant. So what I'm saying, Your Honor, is that the evidence is replete to suggest that there was intent, but the court found that there was none. But why would there be intent to cause a mistrial as to this defendant when there was already a great deal of evidence on the record against this defendant? Well, I believe that the, well, let me just say that the court, this case ended in a mistrial anyway. I think it was going badly with respect to the defendants that were called by the government on direct. It went badly. One of the chief witnesses was held in contempt, apparently had some kind of fit while he was on stand testifying. The court, the government found it necessary to call back the narcotics agents three times to testify on direct, contrary to the standards by which trials normally go forward, and contrary to what the judge and all counsel understood. I think the case was going badly, and just based upon what counsel said at sidebar, what the judge said at sidebar, what else would be the logical conclusion? If you knew that this was going to be a brutal error, if you know what brutal is, and if the court understood what brutal is, and you know what testimony is coming forward, then why would you do it? All right. We'll have you back on rebuttal, Mr. Hensley. Thank you. Smith. Good morning, Your Honors. Delia Smith on behalf of the United States, and first I apologize for my delay based on the weather. I do apologize. Ladies, I'm sorry. Your Honors, the facts as the defense has asserted is not an accurate depiction of what occurred during this trial. It was a pretty blatant prosecutorial error, though. Your Honor, at the time that the testimony of Mr. Joseph was elicited by the government, Mr. Joseph had already been prepped for trial in that we had already gone through a suppression hearing. The suppression hearing, the defense not defendant for, not defense for Dinsey, but defense for that he was a drug dealer and that he had sold drugs for a certain period of time to certain individuals. That statement had not been suppressed. The court denied the motion for suppression, and the issue of suppression was never raised by the defense for Dinsey. When agent Joseph took the stand to testify regarding Mr. Francois, not Mr. Dinsey's criminal conduct, the government intended to solicit and only to solicit the portion of Mr. Francois's statement that did not implicate Mr. Dinsey's association with Mr. Francois, which was that Mr. Francois was and had committed acts against the United States in that he had sold narcotics for a number of years, he admitted to that, and that he even told the agents where the marijuana that he was harvesting, the portion of the island that he had grown. So the agent had been advised by the government as to the portion of the out-of-court statement made by Mr. Francois that was admissible in court. Keeping in mind that Mr. Joseph, notwithstanding the defense's assertion that this is an experienced agent and he has been in numerous trials, that is in fact correct. But Mr. Joseph had testified for three days at this point of this trial because this was a trial that the majority of the evidence was in the form of a Title III wiretap where Mr. Joseph had to first authenticate and lay the foundation for the admissibility of the wiretap. Secondly, to identify each of the defendants and the surveillance investigation that he conducted. And thirdly, to testify about the contents of the calls by indicating what was said, identifying the voice of the speakers, and indicating what the agents did. The government sought and received permission from the court to recall Agent Joseph several times based on the sequence of the evidence and the course in which the government sought to introduce it to the jury. So at no time did this testimony elicited by the question from the government sought to implicate Mr. Dinsey in any way. The government did acknowledge that it was a brutal error because it was a brutal error. Agent Joseph testified to out-of-court statements that implicated Mr. Dinsey and that was an error. So it would have been disingenuous of the government, having realized that an error was committed by this agent, and not admit that that was the case. But the government did in fact ask the court, notwithstanding the brutal error, Your Honor, and in briefing the court, advised the court that given the volume of evidence, Mr. Dinsey had already had almost 100 recorded tapes where over five cooperating witnesses had bought on undercover, had bought three different types of substances from Mr. Dinsey over a two-month investigative period. So the evidence was so voluminous at this point. The government had already moved on from Mr. Dinsey as to the presentation of evidence to that defendant. We had now moved on to Mr. Keith-Francois when Agent Joseph mistakenly, Your Honor, solicited or elicited that testimony that implicated Mr. Dinsey. If when the objections were made, if the judge, instead of saying, what is the statement, had said, were you the trial attorney? Yes, Your Honor, one of us. And said, give me a proffer. Yes. What would your proffer have been? The proffer would have been, Your Honor, as was presented in the suppression hearing, the government intends to introduce through Agent Joseph that Mr. Francois admitted for over a period of three years to growing, harvesting, and selling marijuana on the streets of the Virgin Islands. That is what the government intended to solicit from his testimony because as the defense would have it, the only out-of-court statement made by Mr. Francois was that he sold to Dinsey, that Dinsey was one of his customers. That was only a portion of his statement. The government sought to introduce the portion of his statement which implicated Mr. Francois, that he was an admitted drug dealer, and that he had sold for a period of years, that not only did he sell, that he also grew and harvested the marijuana, and that was where he was connected to this conspiracy. Even as the defense has asserted that it was an out-of-court statement implicating, this would not have benefited the government in any way because at best, that portion of the statement could only establish a buyer-seller relationship which in no way could have connected Mr. Francois to the conspiratorial conduct that the government alleged 12 different individuals were engaged in. So it would have behooved us, which we intended to do, to keep away from that portion of Mr. Dinsey, I'm sorry, Mr. Francois' statement as it implicated Mr. Dinsey because it did nothing more than establish a buyer-seller relationship which could never have sustained a burden for conspiratorial conduct, which is the only charge in which Mr. Francois had been included in the indictment. And there was no intention in the cases that are cited to suggest that the government intentionally lured or boarded Mr. Francois' statement as it implies, applied to Mr. Dinsey. Your Honor, these, those cases are distinguishable. There were in other, those other cases, especially as in Curtis and in Williams, the prosecutor had been warned. The statements were suppressed. The defendant, the prosecutor in those cases attempted and in somehow, as the court remarked, got through the back door where they couldn't get through the front door. In no way did the government intend to do this in this case. These facts are completely distinguishable and could never have aided us in meeting the burden of proof. And as such, we find that the defendant, his bar from double jeopardy is not afforded under these facts, and the defendant should be retried to this, to the crimes that he committed. These crimes were committed against the United States, and the evidence is overwhelming that shows his guilt. And we find that the government did not intend to disrupt this process. The government did not intend, nor did it intentionally board any statements from the agent, and the record does not support that it did. And the defense is now asking for de novo review, but the evidence simply does not support that. The fact, the finding has been made by the court, the lower court. The court found that there was manifest necessity and declared the mistrial because no curative instructions would have caused the jury to disregard what they had already heard. We argued vehemently against the mistrial. We lived and accepted the court's finding of manifest necessity, but in no case, Your Honors, did we intentionally solicit any post-trial statement that implicated Mr. Dinsey, so much so that the conduct could cause this court to find that Mr. Dinsey should be barred from the double jeopardy clause. Thank you very much. Thank you, Your Honors. Next slide. Thank you again, Your Honor. Just to respond to one of the statements made by counsel concerning the questions to the narcotics agent, page 32 of my, of the appellant's appendix at line 11, I'm sorry, line 14. The general question placed at that point was, what if any statements were made by Mr. Francois? Now that's a very general question to a narcotics agent concerning an extrajudicial statement when he came to the stand a third time. What counsel is saying in terms of the overwhelming testimony with respect to Mr. Dinsey has nothing to do with what the court, what she said she understood, what the court said it understood, and what the facts were at the time. Was the case at this point focusing, the presentation by the prosecution, focusing on Francois? It was focusing on Francois and Mr. Dinsey. And Mr. Dinsey, and the relationship with Mr. Dinsey and Mr. Francois is exactly what the testimony was from the narcotics agent. That he had purchased narcotics. No, but I mean, before that, the presentation that was being made by the prosecution, the questions that were being asked, were directed at the case against Mr. Francois? Yes, it was. But what you have to understand, he was the only one that also testified with respect to his relationship to Mr. Dinsey. And throughout this case, all the testimony was also geared to Mr. Dinsey. And so, the finding, the problem with not having a findings of fact with respect to intent, at or about the time the ruling is made, or the objection is made, is because how are we going to find out the factual scenario? But isn't it inherent in the district court's decision that there were findings of fact made that there was no deliberate prosecutorial misconduct? I don't believe that's inherent. Because for that to be inherent, it would seem to me that the testimony has to, just as in other cases, going back to Kennedy, the prosecutor took the stand and testified. There were hearings, there were considerations of fact that was never done here. And so, essentially what was happening, after everybody recognized the Bruton problem, the next day the judge says, there's nothing in the record to suggest that there was any intent. I think the standard of review is a bit more hardy than that, and a bit more robust. The court has to find, in terms of that standard, whether or not there was intent upon the prosecutor, or the court for that matter, to go to the defendant to ask for a mistrial. And if you knew that this was a problem, if you knew that a generalized kind of questioning would elicit this kind of extrajudicial statement, then why would you do it? Your time is up, counsel. Thank you very much. Thank you both sides.